FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 OCT 18 PM 3:18

U.S. DISTRICT COURT
N.D. OF ALABAMA

BIRMINGHAM AIRPORT AUTHORITY,

    Plaintiff,

vs.

CASE NO. CV-99-J-1504-S

ALABAMA LICENSING BOARD
FOR GENERAL CONTRACTORS,

    Defendant.

ENTERED

OCT 18 2001

### MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 75), memorandum and evidence in support thereof, to which the plaintiff responded, and the defendant thereafter submitted a reply.[1] The court has reviewed all of the pleadings and briefs in support of and in opposition to the motion for summary judgment.

---

[1] The plaintiff filed a motion for leave to file a second amended complaint (doc. 100) seeking to include an additional claim that the defendant Board's requirement that general contractors obtain a license before bidding when applied to projects funded by the Federal Aviation Authority ("FAA") is preempted by federal law. The court withheld its ruling on said motion in order to allow the defendant Board to meet and discuss whether or not to exempt projects funded by the FAA from the provisions of the statute in question. *See* Order dated October 17, 2001 (doc. 103). The defendant by correspondence to this court today informed the court about its position (doc. 104). The court adopts said correspondence as defendant's response to plaintiff's motion. Based upon a consideration of plaintiff's motion (doc. 100) and defendant's response (doc. 104) the court does **DENY** plaintiff's said motion. As the licensing board's commitment "not to enforce the statute requiring general contractors to be licensed at the time of bid will apply only to FAA funded projects of the BAA as long as FAA interprets 49 CFR § 18.36 to preempt the State's requirement of a license at the time of bid and only as to contracts that are federally funded in accordance with the description of the project set forth in the FAA Grant Agreement," the court exempts any such funded projects from the ruling contained in this Memorandum Opinion and Order.

1

106

## I. Factual Background

The Birmingham Airport Authority ("Authority") undertook to expand the parking deck ("Parking Deck Expansion") at the Birmingham International Airport ("Airport"). Amended complaint at ¶ 3. The Authority received bids for the general contracting work from both in-state and out-of-state contractors in January 1998. Amended complaint at ¶ 3. In March 1998, the Alabama Licensing Board for General Contractors ("Board") fined the Authority for receiving bids relating to the Parking Deck Expansion from unlicensed contractors. Plaintiff's exhibit F (March 24, 1998 letter from plaintiff's appendix of evidence). The Authority published an invitation for bids on a different project to repave the primary east-west runway ("Repaving Project") on March 15, 1998. Amended complaint at ¶ 7. The deadline for bid submission was set for March 1999. Amended complaint at ¶ 7.

The plaintiff alleges that §§ 34-8-2 and 34-8-6, Alabama Code 1975, violate the Commerce Clause by limiting bidding on its projects to domestic general contractors. Amended complaint at ¶ 8. The plaintiff further alleges that Ala.Code § 34-8-6 violates the Fourteenth Amendment's due process protections for being vague and ambiguous. Amended complaint at ¶ 21.

The defendant filed a motion for summary judgment alleging that the plaintiff's claims fail as a matter of law. The defendant asserts that §§ 34-8-2 and 34-8-6 do not offend the Commerce Clause for the following reasons: (1) the statutes do not violate the Commerce Clause's prohibition on economic protectionism, (2) states may exercise police powers to protect their citizens, (3) the statutes serve the legitimate purpose of protecting the

safety and welfare of the public, (4) the statutes are non-discriminatory and regulate even-handedly, and (5) the statutes do not place an undue burden on interstate commerce. Defendant's memorandum at 12-20. The plaintiff responds that the statutes, combined with the license application process, discriminate against interstate commerce. Plaintiff's opposition at 20. The plaintiff further asserts that the burden on interstate commerce outweighs any legitimate public interest. Plaintiff's opposition at 20.

The defendant next asserts that § 34-6-2 is clear. Defendant's memorandum at 20. The plaintiff responds that use of the language "receives or considers" renders the statute unconstitutionally vague. Plaintiff's opposition at 22.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying

those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.P. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and

all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

### III. Legal Analysis

In the light most favorable to the nonmoving party, the court finds that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law.

#### A. *Commerce Clause*

"Though phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 98 (1994). States may regulate activities affecting interstate commerce if: (1) the regulation does not discriminate against out-of-state competitors, and (2) the regulation is not unduly burdensome. *See Oregon Waste Systems, Inc.*, 511 U.S. at 99; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *Executive Town & Country Services, Inc. v. City of Atlanta*, 789 F.2d 1523, 1526-27 (11th Cir. 1986).

Alabama's licensing regulations do not discriminate against interstate commerce. Alabama Code §§ 34-8-1 *et seq.*, regulate contractors' activities within the state. The specific provisions at issue are § 34-8-2[2], providing license requirements for

---

[2] Section 34-8-2 provides:

(a) Any person desiring to be licensed or desiring a renewal of an existing license as a general contractor

in this state shall make and file with the board, not less than 30 days prior to any regular meeting thereof, a written application on a form as prescribed for examination by the board and the application shall be accompanied by three hundred dollars ($300) for a new application or two hundred dollars ($200) in case of a renewal. If a licensee fails to renew his or her license within 90 days following expiration of the previous license, a late penalty of fifty dollars ($50) shall be collected, upon renewal, in addition to the renewal fee. The applicant shall apply for a license covering the type or types of contracts on which he or she wishes to perform, and the board shall classify contractors according to the type or types of contracts on which they may perform, within maximum bid limits, on the following basis: the applicant's request, his or her last annual financial statement prepared by a certified public accountant (C.P.A.) or by any independent licensed public accountant approved by the Licensing Board for General Contractors, his or her previous experience, equipment, and the facts in each case. An applicant shall not be so classified as to permit him or her to bid on or to perform a type of work not included in his or her request for a license. If the application is satisfactory to the board, then the applicant may be required to take an examination to determine his or her qualifications. If the result of the examination of the applicant is satisfactory to the board, the board shall then issue to the applicant a certificate to engage in general contracting in the State of Alabama, stipulating in each license issued the type or types of work the contractor is permitted to bid on or to perform under his or her license and also setting out a letter symbol indicating the maximum limits on which he or she is permitted to bid or to perform in a single contract. The maximum bid limits shall be set by the formula of not more than 10 times either the net worth or working capital, whichever is the lesser amount, as shown by the applicant's latest financial statement and designated in the classification set out herein that is the closest to this amount. Should the financial statement of the applicant fail to substantiate the limits requested, further consideration may be given to (1) the present market value in lieu of book value of listed assets when properly supported with substantiating evidence, and (2) a combined statement of the applicant that includes other wholly owned or substantially owned interests. When an applicant's statement qualifies for an amount in excess of classification "E", the limits shall then be set as classification Unlimited or "U". The following letter symbols indicate the maximum amount bid limits allowed a licensee on any one single contract undertaking:

```
A -- Not to exceed    $  100,000.00
B -- Not to exceed       250,000.00
C -- Not to exceed       500,000.00
D -- Not to exceed     1,000,000.00
E -- Not to exceed     3,000,000.00
U -- Unlimited
```

(b) Any person failing to pass the examination may be reexamined at any regular or called meeting of the board. The certificate of authority to engage in the business of general contracting in the State of Alabama shall expire 12 months following its issuance or renewal and shall become invalid on that date unless renewed. The board may provide for a transitional period following May 19, 1999, during which licenses may be renewed for less than 12 months, or more than 12 months, in order to implement a staggered license renewal schedule in which licenses would be renewed each month throughout the year. Once the transitional period is completed, each license shall be renewed for a 12-month period. The board may promulgate rules and regulations relating to the procedures for renewal of licenses. Upon the renewal of a license, the board shall reclassify or confirm the license both as to the types of work and bid limits as specified in this section. A licensee may apply for and, on proof satisfactory to the board, may receive an increase in the amount of his or her bid limit or a change in his or her classification. Application for renewal of a license, together with the payment of a fee of two hundred dollars ($200),

contractors, and § 34-8-6³, providing penalties for those who bid without a license or receive

---

received by the board at least 30 days prior to expiration, shall serve to extend the current license until the board either renews the license or denies the application. At the discretion of the board, a limited license may be issued for a particular project.

The sum or fee of three hundred dollars ($300) accompanying original applications and sum or fee of two hundred dollars ($200) accompanying applications for renewals under this section are for the administration and enforcement of this chapter and shall not be refunded to the applicant.

   ³ Section 34-8-6 provides:

  (a) Any person, firm, or corporation not being duly authorized who shall engage in the business of general contracting in this state, except as provided for in this chapter, and any person, firm, or corporation presenting or attempting to file as its own the license certificate of another, or who shall give false or forged evidence of any kind to the board, or to any member thereof, in obtaining a certificate of license, or who falsely shall impersonate another, or who shall use an expired or revoked certificate of license shall be deemed guilty of a Class A misdemeanor and for each offense for which he or she is convicted shall be punished as provided by law. Furthermore, any person including an owner, architect, or engineer who receives or considers a bid from anyone not properly licensed under this chapter shall be deemed guilty of a Class B misdemeanor and shall for each offense of which he or she is convicted be punished as provided by law.

  (b) Every person, firm, or corporation licensed pursuant to this chapter shall include his or her license number in all construction contracts, subcontracts, bids, and proposals. Any person, firm, or corporation violating this provision shall be guilty of a Class B misdemeanor and shall for each offense of which he or she is convicted be punished as provided by law.

  (c) In addition to or in lieu of the criminal penalties and administrative sanctions provided in this chapter, the board may issue an order to any person, firm, or corporation engaged in any activity, conduct, or practice constituting a violation of this chapter, directing the person, firm, or corporation to forthwith cease and desist from the activity, conduct, practice, or the performance of any work then being done or about to be commenced. The order shall be issued in the name of the State of Alabama under the official seal of the board. If the person, firm, or corporation to whom the board directs a cease and desist order does not cease or desist the proscribed activity, conduct, practice, or performance of work immediately, the board shall cause to issue in any court of competent jurisdiction and proper venue, a writ of injunction enjoining the person, firm, or corporation from engaging in any activity, conduct, practice, or performance of work as prohibited by this chapter. Upon showing by the board that the person, firm, or corporation has engaged or is engaged in any activity, conduct, practice, or performance of work prohibited by this chapter, the courts shall issue a temporary restraining order restraining the person, firm, or corporation from engaging in such unlawful activity, conduct, practice, or performance of work pending the hearing on a preliminary injunction, and in due course a permanent injunction shall issue after the hearing, commanding the cessation of the unlawful activity, conduct, practice, or performance of work complained of, all without the necessity of the board having to give bond. A temporary restraining order, preliminary injunction, or permanent injunction issued pursuant to this subsection shall not be subject to being released on bond. In the suit for an injunction, the board may demand of the defendant a fine of up to five thousand dollars ($5,000) plus costs and attorney fees for each offense. A judgment for penalty, attorney fees, and costs may be rendered in the same judgment in which the injunction is made

a bid from an unlicensed contractor. The statutes, on their face, clearly do not discriminate against out-of-state competitors. "The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 88 (1987) quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978). The burden of this state regulation falls on both in-state and out-of-state contractors. The statutes make no distinction between in-state and out-of-state contractors. The Eleventh Circuit has recognized that regulations imposing the same burden on in-state and out-of-state competitors generally do not offend the Commerce Clause. *Georgia Manufactured Hous. Ass'n v. Spalding County, Ga.*, 148 F.3d 1304, 1308 (11th Cir. 1998).

Alabama's licensing regulations are not unduly burdensome. State statutes are not unduly burdensome if the incidental burden does not outweigh the legitimate benefits of the regulation. *See Executive Town & Country Services, Inc.*, 789 F.2d at 1526-27. Requiring general contractors to obtain a license before submitting a bid is not unduly burdensome. The evidence does not show that obtaining a license is more burdensome for an out-of-state contractor than for an in-state contractor. All license applicants must complete the same

---

absolute. The trial of the proceeding by injunction shall be summary and by the trial judge without jury. Anyone violating this chapter who fails to cease work, after a hearing and notification from the board, shall not be eligible to apply for a contractor's license for a period not to exceed one year from the date of official notification to cease work. It shall be within the power of the board to withhold approval, for up to six months, of any application from anyone who prior to the application has been found in violation of this chapter.

   (d) The submission of the contractor's current license number before considering the bid shall be sufficient evidence to relieve the owner, architect, engineer, or awarding authority of any liability under this chapter.

process. *See* Ala. Code § 34-8-2 (the regulation applies to "any person"). An applicant must file an application, including financial information and reference information (bank, credit, trade-engineer or architect, and general contractor references). Plaintiff's exhibit K (application form). Once the application is placed on file, reference forms are sent to the individuals provided in the application. Depo. of Colquett at 7 (April 2, 2001). The applicant is notified of the date of the meeting at which the Board will review the application provided that the verification information has been received. Depo. of Colquett at 41 (March 22, 2001). Approved applicants then receive a license certificate within a number of days of approval. Depo. of Colquett at 12 (April 2, 2001). The Board has regularly scheduled quarterly meetings in January, April, July and October. Depo. of Colquett at 31 (March 22, 2001). However, generally the Board meets more than quarterly. Depo. of Colquett at 19 (April 2, 2001).

The plaintiff complains that out-of-state contractors were effectively precluded from bidding on its Repaving Project because unlicensed contractors did not have enough time to obtain a license before bids were due. Amended complaint at ¶ 7. The evidence indicates otherwise. The plaintiff made its invitation for bids on March 15, 1998 and set March, 1999 as the deadline for bid submission. Amended complaint at ¶ 7. Thus, unlicensed contractors had one year to obtain a license before bids were due. The estimated completion time for the application process ranges from 45 to 60 days. Depo. of Colquett at 56 (April 2, 2001). The Board meets at least four times a year. Plaintiff's opposition at 7; depo. of Colquett at 31 (March 22, 2001). During the relevant time period, the Board also met in December,

1998. Depo. of Colquett at 31 (April 2, 2001). Therefore, the licensing requirement could not have precluded out-of-state contractors from bidding on the plaintiff's Repaving Project.

The plaintiff also complains that the licensing requirement generally deters out-of-state contractors from bidding on projects within the state. Plaintiff's opposition at 19. However, the evidence again indicates otherwise. In the survey submitted by the plaintiff, sixty-six percent of the contractors surveyed answered that laws in other states requiring licensure before bidding would not affect their decision to bid in those states. Plaintiff's exhibit J (General Contractor Survey). Seventy percent of the contractors said Alabama's license requirement would not adversely affect their decision to bid. Plaintiff's exhibit J (General Contractor Survey). Finally, sixty-seven percent of the contractors said the licensing requirement does not impose a burden on their ability to do business in Alabama. Plaintiff's exhibit J (General Contractor Survey). According to the survey, Alabama's license requirement does not even present a burden for the majority of contractors. Plaintiff's exhibit J (General Contractor Survey).

The plaintiff concedes that protecting the public from incompetent contractors is a legitimate benefit of the regulation. Amended complaint at ¶ 18. "The primary purpose [for enacting the legislation] was to protect the public against incompetent contractors for certain-type structures, and also to better assure properly constructed structures which were free from defects and dangers to the public." *Cooper v. Johnston*, 219 So. 2d 392, 394 (Ala. 1969). Public safety concerns outweigh the incidental burden of obtaining a license. Furthermore, no approach exists to promote the local interest "as well with a lesser impact

on interstate activities." *Pike*, 397 U.S. at 142. The plaintiff suggests extending the deadline for obtaining a license to the commencement of construction. Amended complaint at ¶ 18. However, such alternative merely serves to hamper the promotion of local concerns with no lesser impact on interstate activities.

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on the Commerce Clause claim is due to be granted.

### B. *Due Process*

A statute will survive the "void-for-vagueness" doctrine if the statute defines the offense "...with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); see *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Section 34-8-6 provides that receiving or considering a bid from an unlicensed contractor constitutes a misdemeanor. Ala. Code § 34-8-6. The plaintiff's standard practice is to return bids from unlicensed contractors. Depo. of Parker at 63. Therefore, the plaintiff has a clear understanding of what conduct is prohibited. The statute even provides a standard for determining whether a bid is sufficient: the submission of the contractor's current license number before considering the bid eliminates the possibility of liability. Ala. Code § 34-8-6. Thus, the statute is not impermissibly vague.

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on the due process claim is due to be granted.

This court, having considered all of the evidence submitted, finds that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law.

### IV. Conclusion

The defendant's motion for summary judgment is hereby **GRANTED**.

**DONE** and **ORDERED** this the ⎯⎯17⎯⎯ day of October, 2001.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE